David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
William T. Bandettini, SBN 349228
william@dllawgroup.com
**DL LAW GROUP**
1000 3rd St., Suite 1605
San Francisco, CA 94158
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
KEVIN M.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN M.<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS OF CALIFORNIA; ADVANCED MICRO DEVICES COMPREHENSIVE WELFARE BENEFIT PLAN, PLAN NUMBER 511; MCMC SERVICES LLC; DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF KEVIN M.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, KEVIN M. herein sets forth the allegations of this Complaint against Defendants ANTHEM BLUE CROSS OF CALIFORNIA ("Anthem"); ADVANCED MICRO DEVICES COMPREHENSIVE WELFARE BENEFIT PLAN, PLAN NUMBER 511; MCMC SERVICES LLC; and DOES 1 through 10.

/ / /

/ / /

**PRELIMINARY ALLEGATIONS**

**JURISDICTION**

1. Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) and Section 502 (a) (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights, and for the purpose of seeking equitable relief as set forth below and may be fashioned by the court in its discretion under the terms of an employee benefit plan. This action is also brought to remedy Defendant MCMC Services, Inc.'s business practices related to so-called independent reviews of claim denials, and to make Plaintiff whole for Defendant MCMC's alleged breaches of fiduciary duty, duty of loyalty and care; and to prevent any unjust enrichment by MCMC.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendant's improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; attorneys' fees and costs; surcharge and make-whole relief; and other equitable relief that is appropriate based on the alleged misconduct at issue herein.

**PARTIES**

4. At all relevant times, Kevin M. participated in the Advanced Micro Devices Comprehensive Welfare Benefit Plan, Plan Number 511 ("the Plan"), a self-funded plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1).

5. Mental Health benefits under the Plan were at all relevant times administered by Anthem Blue Cross of California ("Anthem").

6. MCMC Services LLC ("MCMC"), an independent review organization used by Anthem to conduct the independent claim reviews. MCMC had the final word on whether or not the claims at

issue herein would or would not be approved and paid.

7. Anthem is an insurance company authorized to transact and currently transacting the business of insurance in the State of California.

8. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's mental health claim administrator.

**FACTS**

9. The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

10. A.M. is KEVIN M.'s daughter, and was, at all relevant times, a member, participant, and a beneficiary of the Plan.

11. At all relevant times, the Plan was in full force and effect.

12. The Plan guarantees, promises, and warrants benefits for medically necessary health care services.

13. For the purposes of treatment of mental health and substance use disorder, the Plan defines "Medically Necessary" as:

> "A service or product addressing the specific needs of that patient, for the purpose of preventing, diagnosing, or treating an illness, injury, condition, or its symptoms, including minimizing the progression of an illness, injury, condition, or its symptoms, in a manner that is all of the following: (i) in accordance with the Generally Accepted Standards of Mental Health and Substance Use Disorder Care, (ii) Clinically appropriate in terms of type, frequence, extent, site, and duration, and (iii) Not primarily for the economic benefit of the Claims Administrator and the Member or for the convenience of the patient, treating physician, or other health care provider."

14. The Plan defines "Mental Health and Substance Use Disorder (MH/SA) Treatment": as:

> "Treatment for any diagnosis: [t]hat is identified in the current edition of the Diagnostic and Statistical Manual of the American Psychiatric Association, including a psychological and/or physiological dependence on alcohol or psychoactive drugs or medications, regardless of any underlying physical or organic cause; and where the treatment is primarily the use of psychotherapy or other psychotherapeutic methods."

15. The Plan guarantees coverage for inpatient and outpatient treatment of mental health conditions, including inpatient treatment at a sub-acute level of care at Residential Treatment Centers.

16. The Federal Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") requires that group health plans offering mental health and substance use disorder benefits not impose treatment limitations on those benefits that are more restrictive than the treatment limitations imposed on medical and surgical benefits in the same classification.

17. Consistent with the MHPAEA, a plan may not impose or apply medical management standards, prior authorization requirements, out-of-area restrictions, facility-type restrictions, provider-specialty restrictions, network restrictions, or other nonquantitative treatment limitations to Mental Health and Substance Use Disorder benefits more restrictively than it imposes or applies comparable limitations to medical and surgical benefits in the same classification.

18. MHPAEA further requires that plans and their agents make available, upon request, the comparative analyses and other documents showing the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation. The Plan expressly represents that, "Medical Necessity criteria and other plan documents showing comparative criteria, as well as the processed, strategies, evidentiary standards, and other factors used to apply an NQTL are available upon request."

**A. A.M.'s Claims**

19. At all relevant times, A.M. was diagnosed with, *inter alia*, autism spectrum disorder, attention deficit hyperactivity disorder, social anxiety disorder, major depressive disorder, trauma and stressor related disorder, parent-child relational problems, and a history of self-harm.

20. A.M. struggled to make friendships and connect with peers. She got in trouble at school for physical violence toward a classmate.

21. A.M. stole money from her parents to buy drugs.

22. A.M. self-harmed by cutting herself.

23. Following the suicide of a close friend, A.M. attempted suicide by intentionally overdosing on Benadryl.

24. A.M. attempted multiple Intensive outpatient programs ("IOP"), a Residential Treatment

Center, and a Wilderness Program.

25. Despite the various modalities of treatment, A.M.'s condition worsened, to the point where her treating medical professionals and others familiar with A.M.'s mental health deficits recommended as medically necessary that A.M. be treated at a higher residential level of care.

26. At the recommendation of A.M.'s treatment providers, A.M. was admitted to an inpatient subacute residential treatment program, Cascade Academy.

**B. Anthem's Denials of Cascade Academy**

27. At all times relevant, A.M.'s treatment at Cascade Academy was medically necessary, based upon the reasoned medical opinions of her medical providers.

28. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for A.M.'s treatment at Cascade Academy.

29. Anthem approved approximately two months of A.M.'s treatment at Cascade Academy.

30. Anthem subsequently issued Explanation of Benefits ("EOB") denying the claims on the grounds that it required additional information from the provider and that the services required prior authorization.

31. A.M.'s healthcare advocates submitted a level one appeal asserting that the Plan clearly permits post-service review when prior authorization is not obtained.

32. Following its post-service review, Anthem denied coverage for A.M.'s treatment on the basis that it was not medically necessary.

33. An Anthem representative stated that the Designation of Representation had not been included with the first appeal, even though it had been both faxed and mailed.

34. In response, A.M.'s healthcare advocates submitted an addendum to the appeal that included another copy of the Designation of Representation.

35. Anthem issued a denial letter in response to the second-level appeal, upholding its determination that the requested treatment was not medically necessary.

**C. MCMC's Deficient Claim Review**

36. After Anthem issued its second level appeal denial, Plaintiff filed an independent review request.

37. Anthem chose MCMC Services LLC ("MCMC") to perform the review. Plaintiff was not involved in determining who would conduct the independent review.

38. A.M. provided thousands of pages of medical records to review in the independent review request.

39. MCMC's review resulted in a report and decision to uphold the underlying claims denial(s).

40. MCMC's determination decision was binding. This means that MCMC had complete and total power and discretion to approve or deny A.M.'s claims at issue herein. If MCMC upheld the denial, no benefits would be paid, and the administrative appeals process would be complete. On the other hand, if MCMC overruled the underlying denial, the claim would be approved and paid, and the administrative appeals process would be complete.

41. MCMC's report was inaccurate, not credible, and either ignored, omitted, or misstated the uncontroverted medical evidence. For example, MCMC misstated A.M.'s suicide and self-harm history. Its report asserted that there was "no indication" A.M. had any past suicide attempts. This statement was factually incorrect. The records submitted to MCMC included medical records documenting attempted suicides by A.M. and confirming that A.M. was at risk of self-harm.

42. MCMC's report was inaccurate, not credible, and either ignored, omitted, or misstated the uncontroverted medical evidence. For example, MCMC stated there were "no ongoing symptoms" for A.M. This was wrong. MCMC received medical records from Cascade documenting that A.M. was on precautions for attempted runaways and self-harm.

43. MCMC's report was inaccurate, not credible, and either ignored, omitted, or misstated the uncontroverted medical evidence. For example, MCMC stated there was no significant functional impairment in age-appropriate activities, ADLs, or self-care. This was wrong. The treating therapist stated that A.M.'s social anxiety made it difficult to complete daily living tasks, including regular school attendance and maintaining healthy relationships. A.M. also needed substantial staff support to get to school and navigate difficult social situations and required interventions that could not have been provided even at the PHP or IOP levels of care. That is exactly the kind of functional impairment MCMC incorrectly stated was absent.

44. MCMC's report was inaccurate, not credible, and either ignored, omitted, or misstated the uncontroverted medical evidence. For example, MCMC's rationale is framed as if the clinical records provided did not support residential care. This was inaccurate. Multiple treating providers recommended continued residential treatment for A.M. because of A.M's emotion-regulation difficulty, periods of self-harm, suicidal ideation, desire to run away, elevated anxiety/depression, social-anxiety impairment, family strain, impulsivity, high risk of regression if discharged before clinically ready, and was medically necessary for severe recurrent psychiatric illness with significant safety risk and functional impairment, requiring residential intensity, structure, and supervision. MCMC possessed all this information.

45. MCMC's report was inaccurate, not credible, and either ignored, omitted, or misstated the uncontroverted medical evidence. For example, MCMC concluded A.M. could have been treated safely and effectively in a lower level of care such as IOP. This is incorrect. The medical records submitted to the IRO documented multiple prior lower-level interventions and continued symptoms despite them: individual therapy, family therapy, group therapy, psychiatric oversight, school transition, persistent self-harm, substance use, school refusal, social withdrawal, family conflict, impaired peer functioning, and depressive symptoms.

46. MCMC's report contained even more inaccuracies and misstatements of fact. For example, MCMC improperly focused on acute symptomology, such as suicidal ideation, psychosis, mania, or medical instability, and failed to acknowledge that the mental health care at issue was at the sub-acute level.. MCMC failed to consider that the treatment at Cascade was medically necessary for A.M. to generalize skills, manage social anxiety, rebuild school/peer/family functioning, prevent relapse, and transition safely.

47. MCMC's report failed to consider medical evidence from Cascade showing later (i.e. post-admission) suicidal ideation, self-harm, elopement, staff interventions.

48. MCMC's report failed to acknowledge A.M.'s many failed attempts at being treated at lower levels of care.

49. MCMC never revealed the identity or credentials of the medical professional who performed the review.

50. MCMC's claims handling failures were so legion in this action as to suggest a pattern and practice of improperly upholding medically necessary mental health claim denials; and a gross failure of quality control with respect to its chosen reviewers and a review of those reviewers' reports.

51. Anthem never questioned, evaluated or scrutinized MCMC's report for inaccuracies, misstatements, or omissions; or for its ultimate determination to uphold Anthem's underlying claim denial(s).

52. A.M.'s services were medically necessary, and her treatment at Cascade Academy met all the requirements necessary for coverage under the Plan.

53. Not only was Anthem and MCMC's purported denial rationale unreasonable in light of the obvious medical necessity for A.M.'s ongoing mental health care, but the denials also violated the California Mental Health Parity Act, Health & Safety Code §1374.72 and Insurance Code § 10144.5, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for approving all of the care for A.M. that is at issue herein.

54. As a result of Defendants' denials, Plaintiff was forced to pay for A.M.'s care and treatment at Cascade Academy from his own personal funds.

55. Plaintiff has exhausted all administrative remedies regarding the denial of A.M.'s mental health benefits.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

**Recovery of Benefits Due Under an ERISA Benefit Plan (Against ANTHEM BLUE CROSS OF CALIFORNIA; ADVANCED MICRO DEVICES COMPREHENSIVE WELFARE BENEFIT PLAN, PLAN NUMBER 511; and DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

56. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

57. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

58. At all relevant times, Plaintiff and his daughter A.M. were insured under the health care plan at issue herein, and Plaintiff's daughter, A.M., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

59. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

60. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

## SECOND CAUSE OF ACTION

**Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3) (against Defendants ANTHEM BLUE CROSS OF CALIFORNIA; ADVANCED MICRO DEVICES COMPREHENSIVE WELFARE BENEFIT PLAN, PLAN NUMBER 511; MCMC SERVICES LLC; and DOES 1-10)**

61. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

62. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Policy, disposition of Plan assets, and administration of the Policy.

63. Plaintiff asserts that a claim for benefits due under the Policy does not provide him with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Policy and applicable law as described below.

64. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

65. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

66. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents

and instruments are consistent with the provisions of ERISA.

67. In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

68. At all material times herein, Defendants violated these duties by, *inter alia,* the following:

A. Consciously, unreasonably, intentionally, and without justification, failing to address the points Plaintiff raised in his appeals, thereby denying Plaintiff the full and fair review required under ERISA.

B. Consciously, unreasonably, intentionally, and without justification ignoring, or omitting relevant medical evidence supporting a determination of medical necessity;

C. Consciously, unreasonably, intentionally, and without justification misstating relevant medical facts, as set forth elsewhere in this complaint;

D. Consciously, unreasonably, intentionally, and without justification, failing to disclose to plan participants their use of certain "level of care guidelines" that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community;

E. Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") which specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses;

F. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

G. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claim, and related claims and/or similar claims, for mental health care benefits;

H. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants to maximize its own profits and minimize the benefits that it pays claimants;

I. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

J. Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims.

69. As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

70. As to MCMC's Breach of Fiduciary Duty, MCMC acted as a fiduciary, or at minimum a functional fiduciary, because it exercised discretionary authority and control over the final benefit determination for A.M.'s claim.

71. MCMC's own denial letter stated: "The determination is binding. This means, if we have overturned the denial, your plan or health insurance issuer will now provide service or payment. If we have upheld the denial, there is no further review available under the appeals process." By issuing a binding determination that controlled whether the Plan would pay more than one year of residential mental health benefits, MCMC was not merely performing a ministerial review function.

72. MCMC exercised final, outcome-determinative authority over Plaintiff's right to benefits under the Plan.

73. MCMC breached its fiduciary duties by upholding Anthem's denial through a review that ignored, misstated, or unreasonably discounted material evidence supporting medical necessity.

74. Among other things, MCMC stated that there was "no indication" A.M. had any past suicide attempts, despite treating-provider evidence documenting an intentional overdose and inpatient hospitalization for acute risk of harm.

75. MCMC also concluded that A.M. had no ongoing suicidal ideation, self-injurious

behavior, elopement risk, or functional impairment, despite Cascade records and treating-provider letters documenting ongoing suicidal ideation, self-harm, elopement urges and attempts, need for staff intervention, failed lower levels of care, school and social impairment, and the need for residential structure to maintain safety and generalize coping skills.

76. These errors show that MCMC failed to conduct a reasoned, faithful, and complete review of the claim materials before issuing a binding determination.

77. Anthem failed to scrutinize the MCMC report for inaccuracies, for completeness, or any other quality control over MCMC.

78. Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of A.M.'s treatment at Cascade Academy. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

## PRAYER FOR RELIEF

## AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

79. Declare that Defendants violated the terms of the Plan by failing to provide mental health benefits;

80. Order Defendants to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

81. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

82. Order Defendants to cease using acute criteria to evaluate claims involving sub-acute mental health treatment;

83. Order that, to the extent Defendants evaluate mental health claims using level of care guidelines, that they use publicly available level of care guidelines;

84. Order that, to the extent Defendants use level of care guidelines to evaluate mental health claims, that Defendants provide copies of the guidelines to all claimants whose claims are denied, along with the specific section(s) of the guidelines it relied upon;

85. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

86. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132 (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

87. For a surcharge relief;

88. For make-whole relief;

89. For relief that prevents unjust enrichment to MCMC;

90. An Order from the Court stating the MCMC report lacks reliability and cannot be considered credible as it relates to the evaluation of the mental health claims at issue herein;

91. Injunctive relief to remedy deficiencies related to MCMC's claims handling practices;

92. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

93. Provide such other relief as the Court deems equitable and just.

Dated: September 14, 2026

Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein* ____
David M. Lilienstein
Katie J. Spielman
William T. Bandettini
Attorneys for Plaintiff, KEVIN M.